IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ANGELA CLARK, Personal Representative for the Estate of Cynthia Butler,<br><br>Plaintiff,<br><br>v.<br><br>DIONE MOODY-DIGGS, *et al.*,<br><br>Defendants. | Civil Action No. 19-cv-03479-LKG<br><br>Dated:  March 8, 2024 |

**MEMORANDUM OPINION
ON CROSS-CLAIMANT'S MOTION FOR DEFAULT JUDGMENT**

Introduction

Cross-Claimant, C&J Financial, LLC ("C&J"), has moved for default judgment against Defendant Dione Moody-Diggs ("Defendant Moody-Diggs") and entry of final order of interpleader, pursuant to Federal Rule of Civil Procedure 55(b)(1).  ECF Nos. 39 and 39-1. Defendant Moody-Diggs has not filed a response to this motion.  No hearing is necessary to resolve the motion. L.R. 105.6.  For the reasons that follow the Court **GRANTS** C&J's motion.

Background

In this interpleader action, the parties seek to determine the rights of the parties to certain Metropolitan Life Insurance Company ("MetLife") insurance proceeds in the amount of $20,000.00 (the "Insurance Proceeds"), which have been paid into the Court registry in exchange for the dismissal of MetLife as a Defendant in this matter.  *See generally*, ECF Nos. 1, 26.

As background, Harold S. Moody died on February 13, 2019.  ECF No. 1 at ¶ 15; ECF No. 15.  Mr. Moody had Basic Life Insurance coverage under the UFCW Unions & Participating Employers Active Health and Welfare Plan, which was funded in part by a group policy No. 526044-1-G issued by MetLife.  ECF No. 1 at ¶ 9, Ex. A.

1

On January 30, 1987, Mr. Moody designated his daughter, Defendant Moody-Diggs, as his beneficiary. *Id.* at ¶ 14, Ex. C. But Mr. Moody later filed a change of beneficiary form and designated his fiancée, Defendant Cynthia Butler, as his sole beneficiary on February 7, 2005. *Id.* at ¶ 13, Ex. B. When Mr. Moody died, Defendant Moody-Diggs claimed entitlement to the insurance benefits. *Id.* at ¶ 16, Ex. E.

On February 18, 2019, Defendant Moody-Diggs executed an irrevocable assignment and power of attorney in favor of J.B. Jenkins Funeral Home (the "Irrevocable Assignment"), in the amount of $7,822.50, to cover funeral expenses from benefits payable under Mr. Moody's insurance policy. *Id.* at ¶ 18, Ex. H. The Irrevocable Assignment provides, in relevant part, that:

> This Irrevocable Assignment is made between Beneficiary below and the Funeral Home/Cemetery below. In consideration for the Funeral Home/Cemetery providing services in the burial of the above Insured, said services having requested and accepted by Beneficiary and/or additional funds have been advanced and paid to the Funeral Home/Cemetery and/or the Beneficiary by C&J ("CJF"). The undersigned irrevocably assigns to the Funeral Home/Cemetery, the above Assignment Amount, plus statutory interest from deceased's date of death until claim paid plus any unearned premiums. Beneficiary hereby guarantees the validity and sufficiency of the foregoing irrevocable assignment to the Funeral Home /Cemetery and C&J, and Beneficiary further guarantees to warrant title to the policy(s) and defend C&J against any claims on the policy(s). **Beneficiary hereby irrevocably authorizes said Insurance Company to make payment of the sum specified above, plus statutory interest and unearned premiums to CJF. Beneficiary hereby irrevocably authorizes said Insurance Company to give Funeral Home/Cemetery or CJF any information that it may require regarding said policy(s). Beneficiary hereby appoints C&J as their Attorney-in-fact and to act on their behalf with regard to the collection of, settlement of, and receipt of proceeds of said policy(s) or certificate(s), including but not limited to, giving C&J the right to endorse checks and claimant statement forms in my name. I authorize CJF to act on my behalf with regard to signing IRS Form W-9 (or an acceptable substitute) in my name.** If, for any reason, C&J does not receive full payment within 90 days I agree to immediately pay C&J the amount of its loss on the assignment. If, for any reason, it becomes necessary for C&J to proceed against me, I understand that I am liable for all costs of collections, including but not limited to, reasonable attorney's fees, and court costs. I agree that the exclusive jurisdiction for legal proceedings hereunder is Salt Lake County, Utah. **In**

2

**the event the policy(s) is not enclosed, I certify that the policy(s) has been lost or destroyed.**

ECF No. 19-1 at 2 (emphasis in original.).  The funeral home later reassigned its interest under the Irrevocable Assignment to C&J.  ECF No. 19 at ¶5.

Because MetLife identified competing claimants to the Insurance Proceeds, it filed this interpleader action on December 5, 2019, seeking the Court's determination of the proper beneficiary of the life insurance proceeds, which would include $7,822.50 payable to C&J based upon the Irrevocable Assignment.  ECF No. 1.  On September 21, 2020, the Court entered an Order granting MetLife's motion for interpleader disbursement.  ECF No. 26.  In that Order, the Court acknowledged that any disbursement of the Insurance Proceeds will "include $7,822.50 payable to C&J Financial based on the assignment to cover funeral expenses."  *Id*.  C&J maintains that it is also entitled to reasonable attorneys' fees and court costs based upon the assignment.  *See* ECF No. 19-1.

On June 9, 2020, the Clerk of the Court entered an Order of Default against Defendant Moody-Diggs and directed Defendant Moody-Diggs to file a motion to vacate the Order of Default on or before October 23, 2020.  ECF No. 24.  To date, Defendant Moody-Diggs has not moved to vacate the Order of Default.  And so, on May 31, 2023, the Court directed C&J to file a motion for default judgment on or before June 13, 2023.  ECF No. 38.

C&J filed the pending motion for entry of default judgment against Defendant Moody-Diggs on June 13, 2023.  ECF No. 39.  Defendant Moody-Diggs has not responded to the motion.  And so, C&J seeks entry of a default judgment against Defendant Moody-Diggs for failure to plead, a final order of interpleader in favor of C&J, and the award of reasonable attorneys' fees, pursuant to Federal Rule of Civil Procedure 55(b)(1).

<u>Legal Standards</u>

Federal Rule of Civil Procedure 55 governs default judgments entered "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."  Fed. R. Civ. P. 55(a).  The Court may enter default judgment at the plaintiff's request and with notice to the defaulting party.  Fed. R. Civ. P. 55(b)(2).  Although courts maintain "a strong policy that cases be decided on the merits," *United States v. Schaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment is appropriate

when the "adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

In deciding whether to grant default judgment, the Court takes as true the well-pleaded factual allegations of the complaint, other than those pertaining to damages. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). The Court applies the pleading standards announced in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), in this context. *See Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011). And so, where a complaint avers bare legal conclusions or "naked assertion[s] devoid of further factual enhancement," the Court will not enter default judgment. *Russell v. Railey*, No. DKC 08-2468, 2012 WL 1190972, at *3 (D. Md. Apr. 9, 2012) (quoting *Iqbal*, 556 U.S. at 678); *see, e.g.*, *Balt. Line Handling Co.*, 771 F. Supp. 2d at 545 ("The record lacks any specific allegations of fact that 'show' why those conclusions are warranted.").

In addition, the Fourth Circuit has explained that "[t]here are two main methods for calculating the reasonableness of attorney's fees—the lodestar method and the percentage-of-recovery method"—and that a "district court may choose the method it deems appropriate based on its judgment and the facts of the case." *McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022). The lodestar amount is defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Lopez v. XTEL Const. Grp., LLC*, 838 F. Supp. 2d 346, 348 (D. Md. 2012) (quoting *Grissom v. The Mills Corp.*, 549 F. 3d 313, 320-21 (4th Cir. 2008); *Plyler v. Evatt*, 902 F. 2d 273, 277 (4th Cir. 1990)) (quotations omitted); *see also De La Cruz v. Chopra, et al.*, No. 18-0337, 2018 WL 2298717, at *2 (D. Md. May 21, 2018) (citations omitted) (The lodestar method "multiplies the number of hours reasonably expended by a reasonable hourly rate.").

Analysis

C&J seeks entry of a default judgment against Defendant Moody-Diggs for failure to plead or to defend in this matter, and a final order of interpleader in favor of C&J, pursuant to Federal Rule of Civil Procedure 55(b)(1). ECF Nos. 39 and 39-1. In addition, C&J seeks to recover its reasonable attorneys' fees, based upon the terms of the Irrevocable Assignment. *Id*. For the reasons that follow, the Court GRANTS C&J's motion.

4

### A. C&J Has Shown That It Is Entitled To A Default Judgment

As an initial matter, a careful reading of the cross-claim makes clear that C&J has shown that it is entitled to entry of a default judgment against Defendant Moody-Diggs for her failure to plead or otherwise defend in this matter. Federal Rule of Civil Procedure 55 provides that, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise," the Court may enter default judgment at a party's request and with notice to the defaulting party. Fed. R. Civ. P. 55(b)(2). And so, a default judgment is appropriate when the "adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

In deciding whether to grant default judgment in this case, the Court takes as true the well-pleaded factual allegations in the cross-claim, other than those pertaining to damages. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). And so, the Court may enter a default judgment against Defendant Moody-Diggs, if C&J's cross-claim is for a sum certain or a sum that can be made certain by computation. Fed. R. Civ. P. 55(b)(1).

Applying the aforementioned standards to this case, the Court is satisfied that C&J has advanced well-pleaded factual allegations to establish the elements of the causes of action that it asserts against Defendant Moody-Diggs. In its cross-claim, C&J asserts three causes of action against Defendant Moody-Diggs: (1) Declaratory Judgment (Count I); (2) Breach of Contract (Count II); and (3) Unjust Enrichment against Moody-Diggs (Count III). ECF No. 19. To support these claims, C&J alleges that Harold S. Moody was covered by a life insurance policy issued by MetLife and that Mr. Moody died on February 14, 2019. ECF No. 19. C& J also alleges in its cross-claim that, after Mr. Moody's death, J.B. Jenkins Funeral Home provided funeral goods and services to allow for the final disposition of the decedent. *Id*.

The cross-claim further alleges that Defendants Moody-Diggs and Butler are the purported beneficiaries of, or potential claimants of, the life insurance policy insuring the life of Mr. Moody. *Id*. at ¶¶ 1-4. In this regard, C&J alleges that Defendant Moody-Diggs assigned the principal amount of $7,722.50 from the MetLife Insurance Proceeds to the J.B. Jenkins Funeral Home and that the funeral home later reassigned these benefits to C&J. *Id*. at ¶ 5. To support

this allegation, C&J provides a copy of the Irrevocable Assignment, which is signed by Defendant Moody-Diggs and a representative of J.B. Jenkins Funeral Home. *Id*. ¶ 5 (Exhibit "A" to C&J's Cross-Claim). C&J alleges that the Irrevocable Assignments provides, among other things, that Defendant Moody-Diggs: (i) warranted title to the life insurance policy; (ii) guaranteed the validity and sufficiency of the assignment; and (iii) promised to immediately pay C&J any assigned amounts it failed to receive from MetLife 90 days after the assignment. *Id*. at ¶ 6.

C&J also alleges in its cross-claim that it provided funding to the J.B. Jenkins Funeral Home to allow the funeral home to provide its goods services in connection with Mr. Moody's final disposition, as consideration for the assignment of the policy benefits. *Id*. ¶ 7. Lastly, C&J alleges that MetLife refused to pay its claim, as a result of the dispute between it and the Defendants Moody-Diggs and Butler. *Id*. at ¶ 8.

Taken as true, C&J's well-pleaded allegations show that the Irrevocable Assignment is an enforceable written contract that supports its breach of contract claim against Defendant Moody-Diggs. Notably, the Court reads the plain terms of the Irrevocable Assignment to provide that C&J would provide funding to the J. B. Jenkins Funeral Home, in the amount of $7,822.50, to allow Mr. Moody's funeral to proceed, in exchange for Defendant Moody-Diggs assigning this amount from the Insurance Proceeds to C&J. ECF No. 19-1. And so, C&J has shown that it has suffered injury in the principal amount of $7,822.50, together with pre-judgment interest, because C&J has not received these Insurance Proceeds.

The Court is also satisfied that C&J's well-pleaded factual allegations establish the elements of its unjust enrichment claim against Defendant Moody-Diggs. Again, taken as true, the factual allegations in the cross-claim show that C&J conferred a material benefit on Defendant Moody-Diggs, by paying the costs of Mr. Moody's funeral. ECF No. 19 at ¶ 24. As C&J alleges in its cross-claim, Defendant Moody-Diggs appreciated the value of the benefit conferred by the payment of these funeral expenses and it would be inequitable for Defendant Moody-Diggs to retain such benefits by failing to ensure the payment of the Insurance Proceeds assigned to C&J under the Irrevocable Agreement. *Id.* at ¶ 25. And so, C&J has also satisfied the elements of its unjust enrichment cross-claim.

Lastly, the litigation history for this dispute makes clear that Defendant Moody-Diggs has repeatedly failed to plead or otherwise defend against the cross claims asserted against her in this

case.  Defendant Moody-Diggs did not to respond to C&J's cross-claim, resulting in the Clerk's entry of an Order of Default against her on June 9, 2020.  ECF No. 24.  And so, Defendant Moody-Diggs has been on notice of the Clerk's entry of default in this case since June 9, 2020, a period of more than three years.  ECF No. 25.

In addition, despite the passage of more than four years since the inception of this case, Defendant Moody-Diggs has neither responded to C&J's cross-claim, nor responded to the Clerk's entry of Default and C&J's motion for default judgment.  Given this, C&J has shown that it is entitled to a default judgment against Defendant Moody-Diggs, in the amount of the outstanding balance, $7,822.50, plus post-judgment interest, in this case.

**B.      C&J Is Entitled To Recover Its Reasonable Attorney's Fees**

As a final matter, C&J has also shown that it is entitled to recover its reasonable attorney's fees, in the amount of $4,268.50, from Defendant Moody-Diggs under the terms of the Irrevocable Assignment.  The Revocable Assignment provides, in relevant part that:

> If, for any reason, C&J does not receive full payment within 90 days I agree to immediately pay C&J the amount of its loss on the assignment. If, for any reason, it becomes necessary for C&J to proceed against me, I understand that I am liable for all costs of collections, including but not limited to, reasonable attorney's fees, and court costs. . .

ECF No. 19-1 at 2.  And so, the Court reads this agreement to allow C&J to recover the reasonable attorney's fee that it has incurred to enforce its right to obtain the assigned Insurance Proceeds from Defendant Moody-Diggs.

C&J represents to the Court that it has incurred attorney's fees of in the amount of $4,268.50 in connection with this case.  ECF No. 39-2.  To support this claim, C&J has provided the Court with an affidavit from its attorney in this matter, Ramsay M. Whitworth, Esq., who is a partner with the law firm Silverman Thompson Slutkin & White, LLC, which describes the law firm's work in this case.  ECF No. 39-2  Mr. Whitworth has more than 22 years of legal experience.  *Id*. at ¶ 9.

The information provided to the Court reflects that Mr. Whitworth billed at a rate of $400-$450 per hour, and that he and the other attorneys and staff at his law firm expended approximately 8.5 hours working on this matter since March 2020.  ECF No. 39-2, Ex. 1.  In this regard, Mr. Whitworth states that he was assisted in this matter by, an associate attorney, Michel

J. Levin, Esq., who has more than six years of legal experience, and that Mr. Levin expended three hours drafting C&J's motion for entry of a default judgment at a rate of $395 per hour. *Id*. at ¶ 7.

C&J has also provided the invoices for the law firm's work in this matter, which, when combined with the attorney's fees incurred by Mr. Levin, reflect that C&J incurred attorney's fees in the amount of $4,268.50 in connection with this matter. *Id*. Mr. Whitworth states in his affidavit that "the time and expenses claimed in this Affidavit are reasonable and were necessary for C&J's prosecution of its Cross-Claim against Defendants." *Id*. at ¶ 8. And so, C& J seeks to recover attorney's fees in the amount of $4,468.50 from Defendant Moody-Diggs.

A careful review of the Mr. Whitworth's affidavit and the provided invoices show that the requested attorney's fees are reasonable, given the litigation history of this case. Notably the rates charged by Mr. Whitworth and Mr. Levin are generally in alignment with the guideline hourly rates that have been found to be reasonable in this District, given their respective levels of experience. *See* L.R. at 127, App'x B, Sec. 3 (rules and guidelines for determining attorney's fees in certain cases). The hours expended by C&J's attorneys also appears reasonable, given the nature of this case. And so, the Court will also GRANT C&J's request for attorney's fees in the amount of $4,468.50.

## Conclusion

For the foregoing reasons, the Court **GRANTS** C&J's motion for default judgment and entry of final order of interpleader judgment (ECF No. 39).

A separate Order shall issue.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby<br>
LYDIA KAY GRIGGSBY<br>
United States District Judge